IN THE MATTER OF: WALTER JOHNSTON AND BANK OF NORTH
   CAROLINA, NATIONAL ASSOCIATION (FORMERLY FIRST
   NATIONAL BANK OF EASTERN NORTH CAROLINA), CO-
   ADMINISTRATORS OF THE ESTATE OF CHARLES H. SALEEM,
   DECEASED

No. 7216SC465

(Filed 30 August 1972)

1. Descent and Distribution § 1— right of aliens to inherit — constitution-
   ality of statutory requirement of reciprocity
      G.S. 64-3, which restricts the right of a nonresident alien to
   inherit property to those cases where reciprocal rights of inheritance
   are shown to exist, is constitutional on its face.

2. Descent and Distribution § 1— alien's right to inherit personal property
      At common law an alien can take lands by purchase, grant, con-
   veyance, or devise, though not by descent; however, it is a general
   rule at common law that an alien has the right to hold and convey
   personal property, including the right to bequeath it to another and
   to inherit it as next of kin or legatee.

3. Descent and Distribution § 3— distinction between real and personal
   property abolished — right of nonresident alien to inherit by intestate
   succession
      North Carolina has abolished by statute the distinction between
   real and personal property for the purpose of rights to property
   by descent and distribution; therefore, absent statutory restriction,
   a nonresident alien is entitled to inherit by intestate succession as
   fully as a resident alien or a citizen of the United States.

4. Descent and Distribution § 1— right of aliens to inherit— reciprocity
   requirement — burden of proof on alien
      Before a nonresident alien is entitled to inherit by intestate suc-
   cession in North Carolina, the alien must prove by the greater weight
   of the evidence that there are reciprocal rights of inheritance between
   citizens and residents of the foreign country in which he resides and
   between citizens and residents of the United States. G.S. 64-3; G.S.
   64-4; G.S. 64-5.

5. Appeal and Error § 57— findings on burden of proof — findings on
   reciprocity — error
      In an action to determine the rights of certain nonresident aliens
   to inherit personal property situated in North Carolina, the trial
   court erred in finding that the aliens failed to establish the existence
   of the reciprocity required by G.S. 64-3 for two reasons: (1) since the
   trial court found G.S. 64-3 unconstitutional, the court on appeal could
   not determine what burden to establish reciprocity the trial court
   found the nonresident aliens had failed to carry; (2) the trial court
   failed to take into consideration records purporting to be birth records
   of the nonresident aliens and documents purporting to establish the

existence of Syrian laws granting reciprocal rights of inheritance for a citizen of the United States, such records and documents having been furnished by an attorney in Syria who purportedly represented the nonresident aliens.

APPEAL by co-administrators from *Hobgood, Judge,* 6 March 1972 Session of Superior Court held in ROBESON County.

This is an action by the co-administrators of the estate of Charles H. Saleem for a declaratory judgment determining the rights of certain nonresident aliens to inherit personal property situated in North Carolina.

Charles H. Saleem (Habid Salim Nohra) was born in Syria and immigrated to the United States. He became a naturalized citizen of the United States and resided in or near Maxton, Robeson County, North Carolina. Charles H. Saleem died intestate on 24 June 1968 leaving an estate consisting entirely of personal property.

It is alleged in the complaint that Charles H. Saleem left no wife or lineal descendent surving. It is alleged that Charles H. Saleem is survived by three children of a deceased brother, Charles T. Saleem (Tewfik Salim Nohra) who was also a naturalized citizen of the United States; and that these three children, Marie S. Bellomy, Margaret S. Johnston, and George E. Saleem, are citizens and residents of North Carolina.

The complaint further alleges that the deceased is survived by five children of a deceased sister, Miriam Salim, and that the five live in, or in the vicinity of, Damascus, Syria. The names of these five children are: Elia Nohra, Youssef Nohra, Rosa Nohra, Wadia Nohra, and Wadad Nohra.

The co-administrators engaged in some correspondence with a Mr. Souheil Sarkis, Avocat A La Cour, Damascus, Syria, who represented himself to be attorney for the five children of Miriam Salim.

None of the alleged heirs at law, citizen or alien, filed formal answer to the complaint.

Judge Hobgood found as facts that the five alleged nonresident heirs at law of Charles H. Saleem had failed to present evidence of kinship with the deceased; that the five alleged nonresident alien heirs at law of Charles H. Saleem had failed to establish reciprocal rights of inheritance in accordance with

G.S. 64-3 and G.S. 64-4; that G.S. 64-3 is unconstitutional; and that no treaty exists between the United States and either Lebanon or Syria respecting rights of inheritance.

He thereupon ruled that the three next of kin residing in the United States and State of North Carolina were entitled to share the assets of the intestate's estate and that alleged next of kin residing in Syria or Lebanon shall inherit no part thereof.

The co-administrators were ordered by Judge Hobgood to appeal to this court.

*Lee, Lee and Murray, by Douglas P. Murray, attorneys for the co-administrators.*

*No appearance contra.*

BROCK, Judge.

The judgment states: "It is further *found as a fact* that no treaty exists with Lebanon or Syria respecting the rights of citizens of those countries to inherit property within the United States." We presume the "found as a fact" to be *lapsus linguae* for two reasons: first, there is no competent evidence to support such determination as a finding of fact; and second, all courts take judicial notice of treaties between the United States and other countries. 29 Am. Jur. 2d, Evidence, § 33, p. 68. The existence or nonexistence of a treaty between the United States and Lebanon or Syria respecting rights of inheritance is pertinent only for the purpose of determining whether the North Carolina Statute is in conflict with such treaty, in which case the treaty would control. 3 Am. Jur. 2d, Aliens and Citizens, § 12, p. 859. If no treaty exists, there is no conflict.

The judgment states: "It is further *found as a fact* that Chapter 64, Section 3, of the General Statutes of North Carolina dealing with the right of nonresident aliens to take real and personal property is unconstitutional." Again we presume the "found as a fact" to be *lapsus linguae* for two reasons: first, there is no competent evidence to support such determination as a finding of fact; and second, the determination of whether a statute is constitutional is a matter of law.

It is not clear to us how or why the constitutionality of the statute became a question in this case. G.S. 64-3 is restrictive

of the right of a nonresident alien to inherit property in that it requires the existence of reciprocal rights. The judgment found as a fact that the alleged nonresident alien heirs had failed to establish any reciprocal rights of inheritance. Having ruled against the alleged nonresident alien heirs for failure to comply with the statute, it seems inconsistent to then declare the statute unconstitutional. Also, we have been unable to find where anyone has properly raised the question of the constitutionality of the statute.

[1]   Nevertheless, we hold that the trial judge committed error on the merits. In our opinion G.S. 64-3 is constitutional on its face. We recognize that the United States Supreme Court has held that an Oregon statute, similar to ours, was unconstitutionally applied, but this does not destroy the validity of the provisions themselves. See, *Zschernig v. Miller*, 389 U.S. 429, 19 L.Ed. 2d 683, 88 S.Ct. 664 (1968). It seems that the unconstitutional application arose from Oregon's interpretation of the quantum of proof required to establish reciprocity. Such a question has not arisen in this case. The holding by the trial court that G.S. 64-3 is unconstitutional must be reversed.

[2]   At common law an alien can take lands by purchase, grant, conveyance, or devise, though not by descent. 3 Am. Jur. 2d, Aliens and Citizens, § 13, p. 859. However, it is a general rule at common law that an alien may hold and convey personal property. The right to hold personal property includes the right to bequeath it to another, and to inherit it as next of kin or legatee. 3 Am. Jur. 2d, Aliens and Citizens, § 12, p. 858. The common law is in force in North Carolina except where modified by statute. G.S. 4-1; *State v. Bass*, 255 N.C. 42, 120 S.E. 2d 580.

[3]   North Carolina has abolished by statute the distinction between real and personal property for the purpose of rights to property by descent and distribution. G.S. 29-3 states: "In the determination of those persons who take upon intestate succession there is no distinction: between real and personal property. . . ." Therefore, absent statutory restriction, it seems that a nonresident alien would be entitled to inherit by intestate succession on the same basis as a citizen or resident. G.S. 64-1 provides: "It is lawful for aliens to take both by purchase and descent, or other operation of law, any lands, tenements or hereditaments, and to hold and convey the same as fully as citizens of this State can or may do, any law or usage to the con-

trary notwithstanding." Except for the reciprocity provisions contained in G.S. 64-3, G.S. 64-4, and G.S. 64-5, a nonresident alien is entitled to inherit by intestate succession as fully as a resident alien or a citizen of this country.

We turn now to that portion of the judgment of the trial court which reads as follows: "It is further found as a fact that the alleged heirs at law or the next of kin of the said Charles H. Saleem who reside in Syria or in Lebanon have presented no proof whatsoever of their kinship or the degree of the same nor have they established any reciprocal rights of inheritance between the countries or between citizens and residents of this country and between citizens and residents of a foreign country."

[4] First we will discuss the finding relative to failure to establish reciprocal rights. G.S. 64-3 provides as follows:

"The right of aliens not residing within the United States or its territories to take real property in this State by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real property upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are residents and the right of aliens not residing in the United States or its territories to take personal property in this State by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take personal property upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are residents."

G.S. 64-4 provides that the burden of proving the existence of the reciprocal rights required by G.S. 64-3 shall be upon the nonresident alien. Therefore, if the nonresident alien fails to prove by the greater weight of the evidence the existence of the law providing for such reciprocal rights, he will not be entitled to share in the estate.

[5]　The finding by the trial court of a failure by the non-resident aliens to establish the existence of the reciprocity required by G.S. 64-3 is faulty for two reasons. First, and most apparent, is that the trial court found G.S. 64-3 to be unconstitutional and we cannot tell what burden to establish reciprocity he found the nonresident aliens had failed to carry. Second, and most persuasive, are the following circumstances. The record on appeal contains the following statement:

> "Prior to the filing of the action for declaratory judgment, the Co-Administrators of Charles H. Saleem's Estate were informed by letter of Souheil Sarkis of Damascus, Syria, that Mr. Sarkis was an attorney and represented Elia Nohra, Youssef Nohra, Rosa Nohra, Wadia Nohra and Wadad Nohra, the five issue of Charles H. Saleem's deceased sister, Miriam Salim Nohra. Additional correspondence was received from Mr. Sarkis by the co-administrators pertaining to the administration of the decedent's estate both prior to and during the period in which this declaratory judgment proceeding was pending and Mr. Sarkis forwarded documents which purported to be notarized English translations of official birth and death records and documents relating to Syrian and Lebanese inheritance laws purportedly giving nonresident aliens the right to inherit property belonging to Lebanese and Syrian citizens so long as the laws of the nonresident alien's country gave similar rights to Lebanese and Syrian citizens."

It seems clear from the foregoing statement that the co-administrators were in contact with an attorney in Syria who purportedly represented the five nonresident aliens. It also appears that said attorney had furnished to the co-administrators certain records purporting to be birth records of the nonresident aliens, and certain documents purporting to establish the existence in Syria and Lebanon of laws granting reciprocal rights of inheritance for a citizen of the United States. Yet it clearly appears that none of this information was considered by the trial court. The only communication which the trial court seems to have considered is a letter from Mr. Sarkis dated 15 February 1972 (about two months after this action was instituted) wherein Mr. Sarkis refers to the earlier forwarding by him to the co-administrators of papers to establish kinship of his clients to the deceased, and papers to establish the existence of laws

granting reciprocal rights for citizens of the United States to inherit in Syria and Lebanon.

If the co-administrators, or their attorneys, were in possession of such documents it seems to us that they were obligated to file them with the trial court for appropriate consideration. From the record on appeal it appears affirmatively that the trial judge considered only the contents of the letter from Mr. Sarkis dated 15 February 1972. The trial judge could, and should, have required the co-administrators to file all papers, and documents competent for consideration for the purpose of rendering judgment in this case. If no such papers or documents were ever forwarded to the co-administrators they would be well advised to offer evidence explanatory of the references in the record on appeal as quoted above and the reference in the 15 February 1972 Sarkis letter. We are not suggesting that the papers and documents referred to constitute competent evidence. We are saying that they should be presented to the court for consideration as evidence and allow the court to rule upon their competence as evidence.

Finally we discuss the finding relative to failure of the evidence of kinship of the nonresident aliens to the deceased. Naturally if kinship to a deceased cannot be established there is no right to intestate succession. In this regard we note that the record on appeal is devoid of evidence of kinship of those persons to whom the judgment ordered the estate to be distributed.

The complaint alleged in paragraph 13 that to the best of the knowledge and belief of the co-administrators, an accurate genealogical table involving the deceased is attached to the complaint as Exhibit A, and further alleged that "the same is specifically alleged to be the genealogy of the said Charles H. Saleem, deceased." Exhibit A as attached to the complaint shows the names and year of birth of each of the nonresident aliens, and shows their degree of kinship to the deceased to be exactly the same as the three resident heirs at law. The residents are shown to be the children of a deceased brother of deceased, and the nonresidents are shown to be the children of a deceased sister of the deceased.

From a reading of the complaint there seems to be no question raised as to the kinship of either the residents or the

nonresidents. The only question raised by the complaint is the right of nonresident aliens to take personal property by descent and distribution, particularly under G.S. Chapter 64. According to a statement appearing in the record on appeal, Walter Johnston, co-administrator, is the husband of one of the resident next of kin of deceased. It ought to be reasonably assumed that these resident next of kin know their first cousins (the nonresident aliens) and that they supplied information to the co-administrators for the purpose of instituting this action. If the co-administrators, or their attorneys, were in possession of evidence of kinship of the nonresident aliens to the deceased, either through testimony of the resident heirs at law or through documents furnished by Mr. Sarkis, it seems to us that they were obligated to offer such for the court's consideration.

That portion of the judgment appealed from which purports to declare G.S. 64-3 to be unconstitutional is reversed. Those portions of the judgment which direct the co-administrators to distribute the net assets of the estate of Charles H. Saleem to his next of kin residing in the United States and holding that the nonresident aliens who are alleged to be next of kin of Charles H. Saleem shall inherit no part of his estate are vacated. This case must be remanded to the Superior Court for a new hearing to determine who are the next of kin of Charles H. Saleem, deceased; and, if any of his next of kin are nonresident aliens, whether they are entitled under G.S. 64-3 and G.S. 64-4 to share in the distribution of his estate.

Judgment reversed in part.

Judgment vacated in part.

Cause remanded.

Judges MORRIS and HEDRICK concur.